IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RITA KIBBIE, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. NO. 1:19-CV-00393-LY |
| | § | |
| | § | **JURY DEMANDED** |
| HAYS CONSOLIDATED | § | |
| INDEPENDENT SCHOOL DISTRICT, | § | |
| Defendant. | § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted,

/s/ Kell A. Simon
Kell Simon
Texas Bar No. 24060888
THE LAW OFFICES OF KELL A. SIMON
501 North IH-35, Suite 111
Austin, Texas 78702
(512) 898-9662
(512) 368-9144 (Fax)
ATTORNEY FOR PLAINTIFF

## I.      INTRODUCTION

A month after Rita Kibbie began a period of FMLA leave for surgery necessitated by her Cerebral Palsy, and while she was still on leave, her manager, Elaine Howard, removed Ms. Kibbie from her position as Director of Benefits.  One of Dr. Howard's subordinates created a spreadsheet purporting to show $132,000 in overpaid insurance benefits for which Ms. Kibbie was blamed, and Dr. Howard then wrote Ms. Kibbie a letter outlining ten separate "Performance Concerns" that she was purportedly investigating.  Dr. Howard brought in a consultant, Cynthia Botello, to assist with Ms. Kibbie's job during Ms. Kibbie's absence.

A week after sending Ms. Kibbie the letter, on February 7, while Ms. Kibbie was still out, Dr. Howard had Ms. Kibbie's job posted, and Ms. Botello applied for it on the same day.

The following week, on February 15, Dr. Howard left HCISD to take a position with another school district.  Her replacement, Jim Baker, knew nothing of Ms. Kibbie or the HCISD benefits department except for what he learned from reading Dr. Howard's "Performance Concerns" letter and the supporting spreadsheet.  When Ms. Kibbie's FMLA leave was to end, Mr. Baker brought her in to the office and reviewed Dr. Howard's letter with her for twenty minutes.  Ms. Kibbie told Mr. Baker that she would like to have the opportunity to respond to Dr. Howard's allegations, as she would be able to show him that they were not true, but that she would need more detail about them and access to HCISD's benefits systems to be able to provide him with the detail necessary to understand them.  Mr. Baker told her he would be back in touch. He then fired her, with no further discussion, nine days later.

The reasons Mr. Baker gave for firing Ms. Kibbie were imported directly from Dr. Howard's "Performance Concerns" memo.  As will be shown in this brief, they are all either

unsubstantiated or provably false - a pretext for firing Ms. Kibbie because of her FMLA leave and the medical condition that necessitated it.  For the reasons that follow, HCISD's Motion for Summary Judgment should be denied.

## II.    ARGUMENT

### A.    Summary judgment should be denied on Ms. Kibbie's FMLA interference claim

On return from FMLA leave, an employee is entitled to be returned to the same position the employee held when leave commenced, or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment. 29 C.F.R. § 825.214.  A failure to reinstate the employee upon return is referred to as interference with the employee's FMLA rights. *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 350–51 (5th Cir. 2013).

FMLA interference claims are analyzed differently from most employment claims, because the employer, rather than the employee, bears the burden of proof.  In order to prevail on summary judgment on an FMLA interference claim, the employer must prove that the employee would not otherwise have been employed at the time she requested reinstatement.  29 C.F.R. § 825.216(a).  The *McDonnell Douglas* burden-shifting framework does not apply to interference claims under the FMLA.  *Kendall v. Walgreen Co.*, 2014 WL 1513960, at *4 (W.D. Tex. Apr. 16, 2014)*; Meisinger v. Wal-Mart Assocs., Inc.*, No. 5:17CV103-JRG-CMC, 2018 WL 5726232, at *10 (E.D. Tex. Aug. 1, 2018).  Further, "claims that arise from the deprivation of an FMLA entitlement do not require a showing of discriminatory intent, whereas claims that arise from alleged retaliation for an employee's exercise of FMLA rights do." *Cuellar,* 731 F.3d at 350–51; *Nero v. Indus. Molding Corp.,* 167 F.3d 921, 927 (5th Cir.1999).

HCISD asserts only one basis for summary judgment on Ms. Kibbie's interference claim: that it only fired her after reinstating her to her position after her FMLA leave concluded. However, bringing Ms. Kibbie back for a 20 minute meeting to review Dr. Howard's letter, without ever allowing her to do any work in her position after her leave, is the epitome of what courts routinely refer to as "illusory" reinstatements in the FMLA context.  As the court held in *Burke v. Laboratory Corp. of America,* 2009 WL 3242014, at * 5 (M.D.Fla. Oct.6, 2009), returning an employee "to a position only long enough to be fired does not amount to a meaningful reinstatement under the statute" because "the law's protections extend beyond reinstating a person to a job for three minutes." *Id.; see also Campbell v. Gambro Healthcare, Inc.,* 478 F.3d 1282,1288 (10th Cir.2007) ("'restoration'" to plaintiff's prior duties for nine days was illusory); *VanStory–Frazier v. CHHS Hospital Co.,* 2010 WL 22770, at * 10 (E.D.Pa. Jan.4, 2010); *Ostermyer v. Toledo Clinic, Inc.,* 2005 WL 927120, at * 5 (N.D.Ohio April 18, 2005); *Stephens v. Neighborhood Serv. Org.*, 07-11908, 2008 WL 3913926 (E.D. Mich. Aug. 19, 2008). Foreclosing an interference claim where the reinstatement was illusory would create "a perverse incentive for employers to make the decision to terminate during an employee's FMLA leave, but allow the employee to return for a brief period before terminating her so as to insulate the employer from an interference claim." *Campbell,* 478 F.3d at 1288.

The FMLA requires that an employee be reinstated to her own position or a substantially equivalent position with the same pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and

authority."   29 CFR § 825.215(a).   Ms. Kibbie was never given any of these following her FMLA leave, and was thus never reinstated.

The cases cited by HCISD in support of its argument that it reinstated Ms. Kibbie do not address the issue of "illusory reinstatement," and are otherwise inapposite.   In *Garcia v. Fulbright & Jaworski*, the the plaintiff returned to work for a full month before being fired for poor performance.   *Garcia v. Fulbright & Jaworski, L.L.P.*, No. CIV. A. H-95-0053, 1996 WL 544371, at *1 (S.D. Tex. Aug. 15, 1996).   Further, *Garcia* was decided on the question of discriminatory intent, which is not part of the analysis of an FMLA interference case.  *Id.* at *7. In *Roberson v. Game Stop/Babbage's*, the plaintiff was never removed from her position, but had only been told of a plan to do so, which never came to fruition.   *Roberson v. Game Stop/Babbage's*, 152 F. App'x 356 (5th Cir. 2005). The employer instead offered the employee the option to remain in her position.   *Id.*   And in *Spratlan v. Alcon Mfg., Ltd.*, No. CV H-08-1884, 2010 WL 11678361, at *9 (S.D. Tex. Feb. 5, 2010), the court did not address the issue of an illusory reinstatement, but simply found that when the plaintiff was returned to work five days before her termination, there was no interference.  *Id.*

The FMLA interference section of Defendant's Motion does not address any issues other than Defendant's position that Plaintiff "returned from leave." Def. Motion at 17.   Since Plaintiff's meeting with Mr. Baker was not a return from leave, summary judgment should be denied on that ground.   Since Defendant bears the burden of proof on an FMLA interference claim, and has not attempted to meet that burden, the Motion should simply be denied.

However, out of an abundance of caution, Plaintiff will also address the (briefly) articulated reason offered by HCISD for Ms. Kibbie's termination, written in the retaliation

section of Defendant's Motion.  As mentioned above, Defendant does not provide sufficient evidence to prove, with no fact issues, that it actually had a legitimate reason to fire Ms. Kibbie while she was on FMLA leave.  And Ms. Kibbie does not have to show an intent to discriminate or retaliate for taking FMLA leave for an interference claim - the only substantive issue is whether Defendant met its burden of proving that Plaintiff would not have been reinstated into her position regardless of her FMLA leave, and thus that Plaintiff engaged in some misconduct that justified terminating her employment. As shown in the section below addressing the pretextual nature of Defendant's three stated justifications for terminating Ms. Kibbie, a reasonable jury could easily find that those issues were not the result of any action or inaction by Ms. Kibbie.  *See* Sec. II(B)(2), *infra*.  Because Defendant has not met its burden to show a lack of fact issues as to Ms. Kibbie's involvement in each of the articulated reasons for terminating her, summary judgment on Ms. Kibbie's interference claim must be denied.

### B.      FMLA retaliation

In addition to her interference claim, Ms. Kibbie also brings a claim for FMLA retaliation.  There are three essential elements to a claim of retaliatory discharge under the FMLA: (1) protected activity by the plaintiff; (2) discharge by the employer; and (3) causal connection between the protected activity and the discharge.  *Chaffin v. John H. Carter Co.,* 179 F.3d 316, 319 (5th Cir.1999).  Defendant does not contest the first two, but argues that Ms. Kibbie cannot establish the "causal connection" element.

### 1.      Elaine Howard was the decisionmaker; this is a "cat's paw" case

Defendant contends that Ms. Kibbie cannot establish the "causal connection" element of her FMLA retaliation case because James Baker, who made the final decision to fire Ms. Kibbie,

and Eric Wright, who approved the recommendation, had no reason to want to retaliate against Ms. Kibbie for taking FMLA leave.  Def. Motion at 6.

While it is true that Dr. Wright (who knew nothing of the actual reasons for Ms. Kibbie's termination, but only approved the recommendation of Mr. Baker) and Mr. Baker were the only HR employees with authority to terminate Ms. Kibbie at the time of her separation, a reasonable jury could find that the decision to terminate her was made by Dr. Howard.

First, Dr. Howard testified that before she left HCISD on February 15, 2018, she had decided to removed Ms. Kibbie from the Director of Benefits position.  Exh. 11 at 2.  Dr. Howard posted Ms. Kibbie's position on February 7, 2018 (Exh. 7), and Cynthia Botello, the consultant doing Ms. Kibbie's job in her absence, applied for it the same day.  Exh. 8.

These are the circumstances that James Baker came to when he took over Dr. Howard's job the following month.  It is undisputed that Baker knew nothing of Plaintiff's job performance, and had only spent a total of 20 minutes talking with her at the time he fired her. The evidence shows that his recommendation was copied almost directly from Dr. Howard's "Performance Concerns" letter.  This fact places this case squarely within the "cat's paw" theory of liability, explained thus by the Fifth Circuit:  "Plaintiffs use a cat's paw theory of liability when they cannot show that the decisionmaker—the person who took the adverse employment action—harbored any retaliatory animus. Under this theory, a plaintiff must establish that the person with a retaliatory motive *somehow influenced the decisionmaker to take the retaliatory action*. Put another way, a plaintiff must show that the person with retaliatory animus used the decisionmaker to bring about the intended retaliatory action."  *Zamora v. City Of Houston*, 798 F.3d 326, 331 (5th Cir. 2015)  (emphasis supplied).  Courts do not "blindly accept the titular

decisionmaker as the true decisionmaker." *Russell,* 235 F.3d at 227. Rather, the discriminatory animus of a manager can be imputed to the ultimate decisionmaker if the decisionmaker "acted as a rubber stamp, or the 'cat's paw,' for the subordinate employee's prejudice." *Laxton v. Gap Inc.*, 333 F.3d 572, 584 (5th Cir. 2003).

To establish causation under a cat's paw theory, the plaintiff must produce sufficient evidence that (1) the alleged non-decisionmakers, motivated by retaliatory animus, took acts intended to cause an adverse employment action; and (2) those acts were a but-for cause of the termination. *Zamora,* 798 F.3d at 333.   In *Zamora*, the court found sufficient evidence for the first prong in the fact that the plaintiff's supervisors, who the defendant contended had not made the termination decision, knew of the plaintiff's protected activity, and that their knowledge of his protected activity "was particularly likely to cause retaliatory animus." *Id.*  Both such factors are present in the instant case.  Elaine Howard both knew that Ms. Kibbie had taken FMLA leave, and removed her from the job.  Exh. 7 at 2.  She also expressed displeasure to the other HR Manager that the two Benefits Department employees were both taking FMLA at the same time.  Breyfogle depo. at 25:14-24.  She then created the "Performance Concerns" document a week before leaving her employment, a document containing numerous misrepresentations about Ms. Kibbie's performance, removed the other benefits employee, who had also just taken FMLA, and sent her the exact same letter she sent to Ms. Kibbie.

The *Zamora* court found "but for" causation from the facts that, as here, the investigation into the plaintiff was initiated by the supervisors who harbored the retaliatory animus against the plaintiff, and that the nominal decisionmaker credited the statements of the supervisors over those of the plaintiff in deciding to terminate the plaintiff.  The *Zamora* court also placed

substantial weight on the fact that, as here, the nominal decisionmaker "had no personal involvement in or knowledge of Zamora's work performance. Instead, he relied on the statements made by those interviewed."   *Zamora*, 798 F.3d at 334.   James Baker had no personal involvement in or knowledge of Ms. Kibbie's work performance.   Instead, he relied on the statements contained in Elaine Howard's letter and the spreadsheet purporting to back up some of the claims made in the letter, in deciding to fire Ms. Kibbie.

The same analysis used by the *Zamora* court shows there to be a genuine issue of material fact as to whether James Baker was the true decisionmaker, or whether he was simply completing the decision to terminate Ms. Kibbie already made by Elaine Howard.

The following evidence establishes that fact issue:  (1) Dr. Howard had already posted Ms. Kibbie's job as vacant while Ms. Kibbie was on FMLA leave, and before Dr. Howard left HCISD; (2) Dr. Howard made negative statements about Ms. Kibbie taking FMLA leave; (3) the February 1 letter written by Dr. Howard contains numerous misrepresentations concerning Ms. Kibbie's work performance that, if not investigated properly, would lead a reasonable person to believe she was not doing her job properly; (4) the spreadsheet showing the errors supposedly made by Ms. Kibbie was prepared under Dr. Howard's supervision, and, without investigating the reasons for the occurrences listed on the sheet, made it look like Ms. Kibbie could not do her job; (5) James Baker relied on the disciplinary letter sent by Dr. Howard to Ms. Kibbie accusing her of eight separate forms of misconduct; and (6) James Baker did not ever give Ms. Kibbie the opportunity to respond substantively to any of the allegations in Dr. Howard's letter before firing her.

Defendant also relies on Mr. Baker's nominal decisionmaker status to argue that even if Ms. Kibbie could prove that she had not engaged in conduct that would have justified termination, Mr. Baker harbored no retaliatory animus toward her, and so, may only at the most have been making a mistaken decision, but not an illegal one. *See* Def. Motion at ¶¶12-13. This exact argument, however, was made by the defendant in *Zamora*, and rejected by the *Zamora* court as contrary to the cat's paw analysis.  The court held that "this argument misunderstands **cat's paw** analysis. In *every* case involving a **cat's paw** theory of causation, the ultimate decisionmaker bases his decision on a non-retaliatory reason. Indeed, that is why **cat's paw** analysis is needed: The plaintiff cannot show that the decisionmaker harbored any retaliatory animus. But because the supervisors caused that decision through actions motivated by retaliatory animus—in effect manipulating the decisionmaker into taking what appears to the decisionmaker to be a non-retaliatory action—the employer is liable. That is precisely what occurred here."  *Zamora* at 335 (citation omitted).  Here, a reasonable jury could find that, by leaving the incoming Mr. Baker with no Benefits Director, allegations of serious performance deficiences, and an open posting for the Benefits Director position, Dr. Howard "manipulated [Baker] into taking what appears to the decisionmaker to be a non-retaliatory action."  Given the foregoing, Defendant cannot defeat Ms. Kibbie's FMLA retaliation claim by arguing a lack of discriminatory intent on the part of Mr. Baker.

### 2.    Causation - temporal proximity and falsity of reason for termination.

As the Fifth Circuit explained recently, the *prima facie* causal link analysis and the pretext analysis are both causation inquiries, and  . . .  the functional difference between the two is not the type of evidence used, but instead is that "the burden [at the pretext stage] is more

9

stringent." *Williams v. B R F H H Shreveport, L.L.C.*, No. 19-30124, 2020 WL 762271, at *3 (5th Cir. Feb. 14, 2020).  In this case, Ms. Kibbie's *prima facie* causal connection is established by both the temporal proximity between her protected activity and her termination, and by the fact that the reasons given for terminating her are false or unworthy of credence. *See Sanders v. Anadarko Petro. Corp.,* 108 Fed.Appx. 139, 143 (5th Cir.2004).  Since the *prima facie* case and the pretext analysis look at the same evidence, but the pretext buren is more stringent, Plaintiff will address pretext here.

HCISD articulates three reasons for firing Ms. Kibbie:  (1) unread e-mail in her inbox in excess of 2,700 emails; (2) unpaid bills or payments due to vendors, some of which were several months in arrears; and (3) failure to cancel benefits of terminating employees resulting in improper district payments to those individuals in excess of $132,000.  Baker depo. at 55:8-55:25; 56:11-56:18; Def. Motion at 16.  Each will be addressed in turn.

1.      **2,700 E-mails:**  Defendant has not produced one single unopened e-mail from Ms. Kibbie's e-mail box, much less 2,700 of them; they rely solely on the testimony of Mr. Baker, who says that he was told that she had them in her inbox.  Baker depo. at 32:21-33:17. However, Ms. Kibbie testified that she did not have unread e-mail in her inbox in excess of 2,700 e-mails at the time she started her leave.  SOF at ¶23; Kibbie depo. at 151:6-13.  Nor was she ever given the opportunity to look at her e-mail or to address the allegation that she had more than 2,700 e-mails in her inbox.  SOF at ¶23.  Since a reasonable jury could choose to believe Ms. Kibbie's testimony over Mr. Baker's, there is a genuine issue of material fact as to whether, at the time she started her FMLA leave, Ms. Kibbie had in excess of 2,700 un-responded to e-mails in her in-box.

**2.      Unpaid bills or payments due to vendors, some of which are several months in arrears.**  Ms. Kibbie's termination letter does not provide any detail about any unpaid bills or payments due to vendors.  Exh. 2.  Nor did Mr. Baker, in meeting with Ms. Kibbie, advise her as to what unpaid bills or payments due to vendors he was concerned about, so she was not afforded an opportunity to respond.  SOF at ¶24.  At his deposition, Baker named three companies to whom there were supposedly unpaid bills or payments due:  Modern Woodman, Guardian, and National Benefits Services.  Baker depo. at 27:18-29:20.  However, paying bills to these companies was not part of Ms. Kibbie's job responsibilities, and, while she typically knew when those bills would be paid, at the time she started her leave, there were no past due payments for any of them.  SOF at ¶24.  Ms. Kibbie testified further that she knew that HCISD's Finance Department was sometimes late in making payments to Guardian and National Benefits Services, and there were times when Ms. Kibbie had to go into the system to ensure that payments were made on time because Finance was late getting reports out so that the payments could be made. SOF at ¶24.  When Ms. Kibbie met with Mr. Baker, he did not provide her with any information concerning any late payments or unpaid invoices, so Ms. Kibbie could not know what either he or Dr. Howard was referring to by "unpaid bills."  Nor has HCISD produced copies of any bills or records of payments that were late because of Ms. Kibbie.  A reasonable jury could thus find that this justification for firing her is "false or unworthy of credence."

**3.      Failure to cancel benefits of terminating employees resulting in improper district payments to those individuals in excess of $132,000.**  Baker testified that in looking at this issue, he reviewed a spreadsheet that purports to show failures by Ms. Kibbie department to cancel the benefits of employees who had ended their employment with HCISD, causing the

district to continue paying for those employees' benefits.   52:20-53:13.   It is the same spreadsheet that Dr. Howard relied upon in writing her February 1, 2018, letter to Ms. Kibbie.

The spreadsheet lists ninety employees whom the District had supposedly overpaid benefits on, or who had some error associated with their benefits.   Exh. 9.   As Ms. Kibbie explained to Mr. Baker, however, there was no way to assign blame to her for those overpayments, because she had already been informing Dr. Howard about the problem of overpayments for months, and the failure to cancel a former employee's benefits could have been caused by many different sources.  SOF at ¶25.  She explained to him that non-cancellation of benefits was most frequently the result of the failure of the HR department to notify the Benefits department that the employee had left the District.   SOF at ¶25.   She further explained that it could also be caused by failures in the computer systems used to administer payroll and benefits, which did not communicate properly.  SOF at ¶25.

Ms. Kibbie further explained to Mr. Baker during their meeting that she would need access to the benefits and payroll computer systems, as well as her e-mail, to explain the sources of the supposed overpayments listed on Ms. Barrett's spreadsheet.  However, Mr. Baker never allowed her access to the information necessary to research the causes of the overpayments. Thus, at the time he fired Ms. Kibbie, Mr. Baker was aware that he did not have the full picture, and that the errors reflected on the spreadsheet might very well not have been caused by Ms. Kibbie.   Indeed, even Cynthia Botello, who replaced Ms. Kibbie as the Director of Benefits, when showed the spreadsheet during her deposition, testified that she would have to do further research on the entries to understand even what was being claimed for each one.  Botello depo. at

44:15-46:16.  Dabney Barrett also testified that James Baker did not speak with her about the spreadsheet.  Barrett depo. at 33:20-23, 46:1-3.

The deposition of Dabney Barrett, who prepared the spreadsheet, confirmed that Ms. Kibbie was not the cause of the overpayments.   Ms. Barrett was forced to admit that the spreadsheet not only overstated significantly the amount of overpayments made by the district (Barrett depo. at 64:18-65:22), but also contained entries that were clearly not the result of errors made by Ms. Kibbie.   The clearest example of these were numerous employees who Ms. Kibbie had made timely requests to HCISD's outside benefits consultant, the Alamo Group, to have them removed from the benefits system so that overpayments would not occur, but the Alamo Group failed to remove them.   Barrett depo. at 66:12-68:15; Exh. 10 (e-mails requesting removals).

One such e-mail read:   "Good afternoon, Cynthia.   Attached is a list of additional terminations we received as of 8/16/2017 to enter in the hub portal before the import from Benefits Connect from the open enrollment feed.   Please make sure an 8/31/2017 termination date is used *so the benefits will not roll over into the 2017-2018 plan year.*"   Barrett depo. at 66:25-67:6; Exh. 10.   Ms. Kibbie is telling Ms. Botello in this e-mail to take the necessary action to prevent exactly the problem Ms. Barrett identified.   Many of the "additional terminations" on the lists sent to the Alamo Group were people who ended up on Ms. Barrett's spreadsheet. *Compare* Exh. 9 *with* Exh. 10.

Of course, at the time she met with Mr. Baker, Ms. Kibbie had no way of knowing that, and no way of communicating it during their 20 minute meeting.   Had Mr. Baker done what Ms. Kibbie had suggested, and allowed her the opportunity to research and explain what had

13

happened with those employees, rather than simply importing the accusation from Dr. Howard's February 1 letter that Ms. Kibbie had failed to cancel the benefits of numerous employees, he would have found that Ms. Kibbie was not responsible for overpayments by the district, and would have had no reason to terminate her.  Thus, a reasonable jury could find that the spreadsheet and "Performance Concerns" documents were prepared as a way to get Ms. Kibbie fired from her job, by making her look bad to the person who would take over for Dr. Howard when she left the district.  And that is exactly what happened.  In the context of a summary judgment motion, "the question is not whether the plaintiff *proves* pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext." *Bright v. GB Bioscience Inc.*, 305 F. App'x 197, 203 (5th Cir. 2008)(*quoting Amburgey v. Corhart Refractories Corp.,* 936 F.2d 805, 813 (5th Cir.1991))(emphasis in original).  A reasonable jury could find that there are genuine issues of material fact as to whether HCISD's articulated reasons for terminating Ms. Kibbe are false or unworthy of credence.  Summary judgment should therefore be denied.

### 3.     Pretext:  other "inconsistencies and incoherences"

As the Fifth Circuit recognizes, "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence that the employer did not act for the asserted non-discriminatory reasons." *Stennett v. Tupelo Pub. Sch. Dist.*, 619 F. App'x 310, 316–17 (5th Cir. 2015)(internal quotation marks and citation omitted)).  In addition to the evidence discussed above showing that the reasons given for terminating Ms. Kibbie were false or unworthy of credence, there is substantial additional evidence of inconsistencies and incoherencies both in Defendant's articulated reason

for firing Ms. Kibbie and in their version of the events leading up to her termination.  These are the following:

1.      **Cost to District Vastly Overstated.**  Though HCISD claims that Dr. Howard was not the decisionmaker for Ms. Kibbie's termination, the District brought Dr. Howard back to respond to Ms. Kibbie's EEOC claim.  In that affidavit, she testified that Ms. Kibbie's errors cost the District "***in excess of $180,000***" in overpayments.  Exh. 11 at 2.  However, the e-mail she received from Dabney Barrett discussing supposed overpayment stated $134,000, while the letter Dr. Howard wrote to Ms. Kibbie stated $132,000.  Exh. 14.  When asked at her deposition how she had arrived at the $180,000 figure, Dr. Howard testified that she "may have estimated." Howard depo. at 74:14-21.  Ms. Kibbie's termination letter, as discussed, only mentions 19 individuals for whom Ms. Kibbie supposedly did not cancel benefits.  If the average cost per employee was $1488 ($134,000/90), then 19 individuals would only total $28,272.  And, of course, as Ms. Kibbie explained to Mr. Baker, there were multiple possible causes of such overpayments not linked in any way to an act or omission by Ms. Kibbie herself.

2.      **Additional claims in Dr. Howard's letter**.  Dr. Howard's February 1, 2018, letter to Ms. Kibbie addresses ten supposed concerns with Ms. Kibbie's performance.  These were the exact same ten concerns included in the letter sent to Natalie Breyfogle shortly after Ms. Breyfogle started her FMLA leave.  When asked about each of these concerns at her deposition, Dr. Howard was not able to provide any substantiation for any of them.  SOF at ¶¶27-30.

3.      **Additional issues with Dabney Barrett's spreadsheet**.  In reviewing Ms. Barrett's spreadsheet, it is clear that, though Mr. Baker understood it to show the mistakes that

had been made by Ms. Kibbie that cost the district money (Baker depo. at 57:20 to 58:2), there were numerous entries that indisputably could not be tied to Ms. Kibbie in any way, because they arose after Ms. Kibbie started her FMLA leave.  These include employees in rows 4, 5, 6, 7, 8, 9, 10, 15, 16, and 18.  Exh. 9.

    **4.**     **District claims failure to reconcile, though Ms. Kibbie did it monthly.** Though Mr. Baker did not have any speculation or knowledge as to how he thought Ms. Kibbie had caused the benefits overpayments, Elaine Howard and Natalie Breyfogle both testified they resulted from Ms. Kibbie failing to reconcile the benefits accounts.   Howard depo. at 36:17-20. However, that is not possible, as Ms. Kibbie reconciled those accounts every month (SOF at ¶32), and, as discussed above, told Ms. Howard on multiple occasions about the problems she noted during reconciliations of the resignation information not being communicated in a timely manner, and the computer systems not feeding information to each other correctly.

    **5.**     **Fact issues as to Ms. Kibbie's overall job performance**.  Though not part of their articulated reason for firing Ms. Kibbie, HCISD spends a good deal of its brief and statement of facts attempting to paint her as being generally incompetent and having poor communication skills.  However, Natalie Breyfogle, who worked with Ms. Kibbie for two years, testified to just the opposite.  She testified that Ms. Kibbie "remembers everything," is extremely detail-oriented, provided her with training on how to be a benefits specialist, and was one of the best supervisors she had ever had.  Breyfogle depo. at 31:7-32:7.  Ms. Breyfogle also testified that Dr. Howard had a lot of personal animosity toward Ms. Kibbie, and that she had observed Dr. Howard behave in an inappropriately hostile manner toward Ms. Kibbie.  Breyfogle depo. at 30:4-31:6.

Based on the foregoing, a reasonable jury could find that there was a causal connection between Ms. Kibbie's FMLA leave and her termination, and that HCISD's reason given for terminating Ms. Kibbie was pretextual.   Summary judgment on Ms. Kibbie's FMLA retaliation claim should thus be denied.

### 4.      Liquidated Damages

HCISD argues at pp. 18-19 of its Motion that Ms. Kibbie is not entitled to liquidated damages under the FMLA because Mr. Baker's decision to terminate her was made "in good faith."   The FMLA entitles a wronged employee to an additional award of liquidated damages equal to the amount awarded for damages plus interest. 29 U.S.C. § 2617(a)(1)(A)(iii). If the employer can show that its violation was "in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation" of the FMLA, then the court has discretion to reduce the damages. *Id.* But "[d]oubling of an award is the norm under the FMLA" and the "court's discretion to reduce the liquidated damages 'must be exercised consistently with the strong presumption under the statute in favor of doubling.'" *Nero,* 167 F.3d at 929 (5th Cir. 1999).   There is, at the very least, a fact issue as to whether Mr. Baker acted in good faith.   He failed to properly investigate the allegations Dr. Howard made against Ms. Kibbie and failed to question Ms. Kibbie herself about them, though Dr. Howard's letter of February 1 claims that she will get a chance to respond fully to the allegations.  Exh. 14.  Thus, what HCISD characterizes as an "earnest deliberative process" could easily been seen by a jury to be a rubber stamping of decisions originally made by a supervisor, Dr. Howard, unhappy with two employees taking FMLA leave at once, and then generating lengthy documents that make it appear that the employees were failing at their jobs when, in fact, the documents and evidence

show that they were not.  The fact that Mr. Baker did not even have enough of an understanding of Ms. Kibbie's job to know, for instance, that she was not responsible for paying the supposed late bills that he referenced in her termination letter, does not allow Mr. Baker to show that he acted in good faith in terminating her employment.

**C.     Summary judgment on Plaintiff's ADA and TCHRA claims is inappropriate**

While this case arises primarily from Ms. Kibbie's need for Family and Medical Leave to cover the absence necessitated by her surgery, a reasonable jury could also find that HCISD violated the "regarded as" disabled provisions of the ADA and TCHRA in deciding to terminate Ms. Kibbie's employment.

As the regulations interpreting the ADAAA make clear, an individual who is being discriminated against because of an impairment - short of being granted a reasonable accommodation -- should be bringing a claim under the third ["regarded as"] disabled prong of the definition [of disability], which will require no showing with regard to the severity of his or her impairment."  29 U.D.C. 1630.2(G)(citing Joint Hoyer-Sensenbrenner Statement at 4).  As the Fifth Circuit held in *Burton v. Freescale*, in order to establish a "regarded as" claim under the ADA, the plaintiff need only show that her "employer perceived [her] as having an impairment" and that it discriminated against her on that basis.  *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 230 (5th Cir. 2015).  As the employer did in *Burton*, HCISD argues here that the decisionmaker who terminated Ms. Kibbie had no knowledge of Ms. Kibbie's actual disability. Def. MSJ at 6-7.  However, while Dr. Howard may not have known about Ms. Kibbie's actual diagnosis of Cerebral Palsy, she knew that Ms. Kibbie walked with a visible limp, had a handicap placard for her car and parked in a handicap parking place at the School District

offices, and that she needed to take leave to have surgery related to her medical condition.  Exh. 1 at ¶15.  This knowledge is similar to the knowledge that the Fifth Circuit in *Burton* found to be sufficient for a finding that the employer perceived Ms. Burton has having an impairment:  a need to "sit down for a bit," having "chest pains" and "trouble breathing," coupled with the knowledge that Ms. Burton had been injured on the job and had had to go to the hospital. *Burton*, 798 F.3d at 230-231[1].

Dr. Howard's statement that she could not have both benefits employees out at the same time, in combination with her decision to remove Ms. Kibbie from her job for pretextual reasons while she was out on leave, would allow a reasonable jury to find that Dr. Howard, the true decisionmaker, discriminated against Ms. Kibbie on the basis of Ms. Kibbie's known physical limitations.  Terminating Ms. Kibbie because she had to take a medical leave of absence because of a medical limitation is tantamount to terminating her because of that limitation, and thus a violation of the ADA.  *See Villalobos v. TWC Admin. LLC*, No. 16-55288, 2017 WL 6569587, at *1 (9th Cir. Dec. 26, 2017)("conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination.")

HCISD's argument that Ms. Kibbie's ADA/TCHRA claim is foreclosed because she "never sought any accommodation, or pursued any internal grievance or made any report of employment decisions she felt were based on her disability," also fails.  *See* Def. Motion at 9. There is no requirement in the ADA that an employee who believes she has been terminated

---

[1]  HCISD's reliance on *Taylor v. Principal Fin. Grp., Inc.* is thus misplaced, as that case concerns reasonable accommodations and proof of an actual disability, where as this one does not concern reasonable accommodations, but only HCISD's discrimination against Ms. Kibbie because of her known medical limitations.  Nor does the ADA require Ms. Kibbie to show that HCISD perceived her as being "substantially limited in a major life activity," as was required in *Taylor*, because that analysis is only necessary with a claim of actual disability, rather than "regarded as" disability.  29 U.S.C. 1630.2(L).

because of her medical limitations has to do anything besides file a Charge of Discrimination with the EEOC or Texas Workforce Commission.  She certainly does not have to seek an accommodation when she does not need one, or notify the employer prior to filing her EEOC charge that she believed she had been terminated because of her medical limitations.

Finally, HCISD's attempt to raise the "same actor inference" defense to Plaintiff's ADA claim also fails, as none of the decisionmakers in this case was involved in either the decision to hire Ms. Kibbie or to promote her to the position of Director of Benefits.  Defendant correctly articulates the standard for that defense - that the inference "allows a presumption that aniums was not present where the same actor responsible for the adverse employment action either hired or promoted the employee at issue."  Def. MJS at para. 14.  Since neither Dr. Howard nor Mr. Baker made the decision to hire or promote Ms. Kibbie, HCISD cannot use the same actor inference to attempt to avoid liability.

Given these facts, and Plaintiff's clear demonstration of the pretextual nature of Defendant's decision to terminate her, a reasonable jury could find that HCISD violated the ADA in deciding to terminate Ms. Kibbie's employment.  Summary judgment should thus be denied.

<div style="margin-left: 40%">

Respectfully submitted,

/s/ Kell A. Simon
Kell Simon
Texas Bar No. 24060888
THE LAW OFFICES OF KELL A. SIMON
501 North IH-35, Suite 111
Austin, Texas 78702
(512) 898-9662
(512) 368-9144 (Fax)

ATTORNEY FOR PLAINTIFF

</div>

## CERTIFICATE OF SERVICE

By my signature hereunder affixed, I certify that a true and correct copy of the foregoing document has been transmitted to all parties of record **via CM/ECF**, on this 26th day of February, 2020, addressed as follows:

Todd A. Clark
Kelley L. Karchthaler
WALSH GALLEGOS TREVIÑO RUSSO & KYLE P.C.
505 E. Huntland Drive, Suite 600
Austin, Texas 78752
Telephone: 512-454-6864
Facsimile: 512-467-9318
tclark@wabsa.com
kkalchthaler@wabsa.com

/s/ Kell A. Simon
Kell A. Simon