# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| RITA KIBBIE,<br>*Plaintiff*<br><br>v.<br><br>HAYS CONSOLIDATED<br>INDEPENDENT SCHOOL DISTRICT,<br>*Defendant* | Case No. A-19-CV-393-SH |

## O R D E R

Before this Court are Defendant's Motion for Summary Judgment, filed February 5, 2020 (Dkt. No. 18); Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, filed February 26, 2020 (Dkt. No. 20); and Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment, filed March 4, 2020 (Dkt. No. 22).[1]

### I. Factual Background

On December 16, 2009, Rita Kibbie, who has cerebral palsy, began working for Hays Consolidated Independent School District ("District") as a Benefits Coordinator in the District's Department of Human Resources. In August 2014, Kibbie was promoted to the position of Director of Benefits for the District.

In January 2015, the District hired Dr. Elaine Howard as the District's new Chief Human Resources Officer. While the parties acknowledge that Kibbie received good evaluations from her previous supervisors, Howard rated Kibbie "below expectations" in several areas in her initial annual performance evaluation in July 2017. Dkt. No. 19-1 at p. 24-26. However, after Kibbie responded to the criticisms of her job performance, Howard gave Kibbie an overall "satisfactory" rating for her final 2017 performance evaluation, submitted in September 2017. *Id.* at p. 27-31.

---

[1] The parties consented to proceed before a Magistrate Judge on April 6, 2020. Dkt. No. 23.

Kibbie alleges that, in November 2017, she notified Howard[2] and Lisa Thomas, the District's Director of Employee Services, that she would be taking leave under the Family Medical Leave Act ("FMLA") from December 15, 2017, through March 1, 2018, in order to have Split Anterior Tibial Tendon Transfer surgery. Kibbie avers that the surgery was necessary "to correct symptoms related to her cerebral palsy that substantially limited her ability to engage in several major life activities, including walking." Dkt. No. 1 at ¶ 6.

While Kibbie was out on FMLA leave, the District contends, Howard discovered that Kibbie had neglected some of her job duties, including having 2,700 unread emails in her inbox, "some of which she received months earlier and had not been responded to;" failing to cash checks from employees, pay bills, or make payments to vendors, which "could have resulted in the complete loss of certain benefit options to all Hays CISD employees;" and numerous discrepancies between employee enrollment and payroll deductions. Howard Affidavit, Dkt. No. 19-2 at ¶¶ 8-9.

On February 1, 2018, while Kibbie was still on leave, Howard notified her via a certified letter that Howard had "several performance concerns which would indicate that, prior to your leave, you failed to properly and fully perform your duties as the Director of Benefits" for the District. Dkt. No. 19-1 at p. 32. Specifically, Howard accused Kibbie of having 2,700 unread emails in her inbox and failing to pay vendors, process employee benefits, make deposits, cancel benefits of terminated employees, collect monies owed to the district, and properly handle confidential employee information. *Id.* The letter further stated:

> A full investigation of these matters is being undertaken and upon your return to work, you will have an opportunity to provide an explanation for your actions. Be advised that these are serious matters and may result in the termination of your employment.

---

[2] The District contends Kibbie notified only Thomas of her plan to take FMLA leave. Dkt. No. 19-2 at ¶ 7.

*Id.* A week after sending the letter, and while Kibbie was still on leave, Howard posted Kibbie's position as vacant on the District website.

Before Kibbie returned from leave, Howard left her position to take a job with a different school district. Kibbie alleges that the District informed her to wait to file any response to Howard's letter until her replacement, James Baker, started as the new Chief HR Officer on March 19, 2018. Kibbie notified Baker that she would be returning to work on April 2, 2018, she alleges, and that she would "then answer any questions or concerns he had." Dkt. No. 20-2 at ¶ 7.

On April 2, 2018, Kibbie attempted to return to work but was not permitted to do so. Instead, she alleges, she had a meeting with Baker to discuss Howard's concerns with Kibbie's job performance. During the meeting, Baker told Kibbie that she was being placed on administrative leave pending an investigation into the concerns about her job performance. Dkt. Nos. 1 at ¶ 11 and 19-1 at p. 34. On April 13, 2018, the District terminated Kibbie's employment. Dkt. No. 20-3. In the termination letter, Baker informed Kibbie that after his investigation into her performance concerns, "it is my conclusion that you have failed to properly perform some of your key duties and responsibilities as Director of Benefits." *Id.* at p. 1.

Kibbie alleges that the reasons given for her termination are a pretext for discriminating against her because of her disability and for taking FMLA leave. She filed suit on April 8, 2019, alleging that the District (1) discriminated against her because of her disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, and the Texas Commission on Human Rights Act ("TCHRA"), Texas Labor Code §21.001; and (2) violated the Family Medical Leave Act, 29 U.S.C. §§ 2612 and 2615, by terminating her while she was on FMLA leave and refusing to reinstate her into her position when she returned from leave. On February 5, 2020, the District filed its Motion for Summary Judgment under FED. R. CIV. P. 56(c).

## II. Legal Standards

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials, and any affidavits on file show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. A court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation also are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports its claim. *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### III. Analysis

The District contends that Kibbie has failed to establish a violation of the ADA or the FMLA. The Court assesses Kibbie's claims in turn.

### A. ADA Claim

Kibbie alleges that the District intentionally discriminated against her because of her disability by terminating her employment, in violation of the ADA, the TCHRA, and the Texas Labor Code.[3] As Kibbie clarifies in her Response, she brings only an intentional disability discrimination claim under the ADA, not a claim of failure to accommodate.

#### 1. Requirements for a Prima Facie Case

The ADA is "designed to remove barriers which prevent qualified individuals with disabilities from enjoying employment opportunities available to persons without disabilities." *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999). It "prohibits discrimination against a qualified individual because of a disability" in regard to employment decisions. *Id.* Courts "are commanded to construe disability broadly, to the maximum extent permitted by the terms of the Act." *Williams v. Tarrant Cty. Coll. Dist.*, 717 F. App'x 440, 447 (5th Cir. 2018) (citation omitted).

As with other antidiscrimination statutes in the employment context, a plaintiff attempting to show a violation of the ADA using circumstantial evidence must satisfy the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009). To make out a prima facie case of discrimination, a plaintiff must show that she (1) has a disability or was regarded as disabled; (2) was qualified for the job; and (3) was subject to an adverse employment decision on account

---

[3] Because the TCHRA and the Texas Labor Code parallel the language of the ADA, Texas courts apply ADA law in evaluating such claims. *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 2020 WL 1147164, at *3 n.16 (5th Cir. Mar. 10, 2020); *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 285-87 (5th Cir. 2004). Accordingly, the following ADA analysis applies equally to Kibbie's state law claims. *Id.*

of her disability. *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014). If the plaintiff makes that showing, a presumption of discrimination arises, and the employer must "articulate a legitimate non-discriminatory reason for the adverse employment action." *Chevron Phillips Chem.*, 570 F.3d at 615. The burden then shifts to the plaintiff to produce evidence from which a jury could conclude that the employer's articulated reason is pretextual. *See id.*

### 2. Whether the District Regarded Kibbie as Disabled

The District states that it does not contest the first or second elements of Kibbie's prima facie case but asserts that she has failed to meet the third element, contending that it "can establish as a matter of law that Plaintiff's termination was not because of her stated disability." Dkt. No. 18 at p. 6. In support of this argument, the District avers that "there is no evidence that anyone making ultimate employment decisions for [the District] had any awareness of any disability." *Id.* The District argues that the two people involved in Kibbie's termination, Superintendent Dr. Eric Wright and Chief Director of HR James Baker, were not aware of her disability and, therefore, there is no evidence that she was terminated because of her disability. The District argues that "[e]vidence of employer knowledge of a disability and the corresponding limitations is essential to the viability of a disability discrimination case." Dkt. No. 18 at p. 7.

Kibbie's disability discrimination claim in this case, however, is based on the "regarded as" language under the ADA, which requires not that the defendant knew she was diagnosed with cerebral palsy, but rather that she was perceived as having an *impairment*. Kibbie is not pursuing a failure to accommodate or retaliation claim under the ADA. Thus, the District's arguments that Kibbie's ADA claim fails because she "never sought any accommodation, or pursued any internal grievance" are misplaced. Dkt. No. 18 at p. 1, 9.

Kibbe can prevail on her "regarded as" disability claim by establishing that "she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).[4] The "whether or not" language was enacted as part of the ADA Amendments Act of 2008 ("ADAAA"). The ADAAA overruled prior authority "requiring a plaintiff to show that the employer regarded him or her as being substantially limited in a major life activity." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 230 (5th Cir. 2015).[5] Thus, Kibbie "need only show that her employer perceived her as having an impairment and that it discriminated against her on that basis." *Id.* (citation omitted).

The Court finds that Kibbie has presented sufficient evidence to show that the District was aware of her physical impairments before it decided to terminate her. For example, Kibbie points out that both Howard, her direct supervisor, and Thomas, who processed her FMLA leave, knew that Kibbie "walked with a visible limp, had a handicap placard for her car and parked in a handicap parking place at the School District offices . . . ." Dkt. No. 20 at p. 18-19; Dkt. No. 20-2 at ¶ 15. Kibbie contends that both Howard and Thomas had been passengers in her car when she parked in a disabled parking space. Dkt. No. 20-2 at ¶ 15.

---

[4] Courts have pointed out that because the definition of a qualifying "disability" under the "regarded as" disabled prong of 42 U.S.C. § 12102(1) contains causal language, "the third prima facie element of disability discrimination appears to be subsumed into the definition of 'regarded as' disabled." *Pinckney v. Fed. Reserve Bank of Dallas*, 2013 WL 5461873, at *11 (W.D. Tex. Sept. 30, 2013).

[5] The District's argument that Kibbie must show that it "had knowledge of the substantial limitations created by a disability and its corresponding limitations," Dkt. No. 18 at p. 8, therefore is not applicable in the analysis of a "regarded as" disability claim. *See E.E.O.C. v. Gulf Logistics Operating, Inc.*, 371 F. Supp. 3d 300, 310 (E.D. La. 2019) (noting that because plaintiff's complaint alleged that he was "regarded as" having a physical or mental impairment, it was not necessary to consider defendant's arguments that plaintiff did not have record of a disability, or whether the alleged disability limited, or was perceived to limit, a major life activity).

Thomas testified in her affidavit that: "I was aware that Ms. Kibbie had a disabled parking tag, and I was aware of many particulars concerning her disability." Dkt. No. 19-4 at ¶ 4. Thomas also acknowledged that she knew Kibbie was taking FMLA leave to undergo surgery related to her disability. *Id.*

While Howard denies that she was aware of Kibbie's disability, there is record evidence that Howard was not happy that both Kibbie and Kibbie's co-worker were out on medical leave at the same time. Dkt. Nos. 19-2 at ¶ 7, 19-4 at ¶ 4, 20-5 at 25:14-24. Although the District contends that the ultimate decision makers in this case, Wright and Baker, were not aware that Kibbie was disabled, they both relied on Howard's recommendations and poor performance evaluations in making their decision to terminate Kibbie. Dkt. Nos. 19-1 at ¶ 5-6, 19-3 at ¶ 2.

The Court finds Kibbie's allegations sufficient to create a fact issue as to whether the District regarded Kibbie as disabled. *See Burton*, 798 F.3d at 230-31 (rejecting defendant's argument that it was not aware of the plaintiff's disability where defendant knew plaintiff had been injured on the job and was absent from work due to health issues); *see also Villalobos v. TWC Admin. LLC*, 720 F. App'x 839, 841 (9th Cir. 2017) ("[A] decision maker's ignorance does not categorically shield the employer from liability if other substantial contributors bore the requisite animus.").

### 3. Reason for Kibbie's Termination

To make out a prima facie "regarded as" claim, Kibbie also must show she was terminated because of her impairment. *Burton*, 798 F.3d at 230. Kibbie argues that terminating her "because she had to take a medical leave of absence because of a medical limitation is tantamount to terminating her because of that limitation, and thus a violation of the ADA." Dkt. No. 20 at p. 19.

Although the two issues are related, to show a violation of the ADA, Kibbie must come forward with summary judgment evidence that she was terminated because of her physical impairments.

8

She alleges that the District was aware of her impairments long before she took FMLA leave in December 2017. Yet she has identified evidence only that she was terminated for taking FMLA leave, not because of her disability. Accordingly, Kibbie has failed to make a prima facie case of disability discrimination under the ADA, and the District's Motion is granted as to that claim.

## B. FMLA Claims

The FMLA allows "an eligible employee" up to twelve weeks of annual unpaid leave for "a serious health condition" that prevents her from performing the functions of her job. 29 U.S.C. § 2612(a)(1)(D). When an employee returns from FMLA leave, the Act requires an employer to restore the employee "to the position of employment held by the employee when the leave commenced," or "to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1).

An employer may not interfere with the exercise of any right provided under the Act, nor may it "discharge . . . any individual for opposing any practice made unlawful by" the Act. *Id.* § 2615(a). Thus, § 2615(a) of the Act creates two types of claims: (1) interference claims, in which an employee asserts that her employer denied or otherwise interfered with her substantive rights under the FMLA, and (2) retaliation claims, in which an employee asserts that her employer discriminated against her because she engaged in activity protected by the FMLA. *Id.* Interference claims do not require a showing of discriminatory intent, whereas retaliation claims do. *See DeVoss v. SW Airlines Co.*, 903 F.3d 487, 491 (5th Cir. 2018); *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 349 (5th Cir. 2013) (Elrod, J., concurring). Here, Kibbie alleges both types of claims.

### 1. Interference Claim

Kibbie alleges that the District interfered with her rights under the FMLA by failing to reinstate her to her position when she returned from FMLA leave. As noted, the FMLA requires an employer to restore the employee "to the position of employment held by the employee when the leave

commenced," or "to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1). "[T]he right to reinstatement upon return from leave is a right protected by FMLA's interference provision." *Ford-Evans v. Smith*, 206 F. App'x. 332, 335 (5th Cir. 2006); *see also Mauder v. Metro. Transit Auth. of Harris Cty., Tex.*, 446 F.3d 574, 580 (5th Cir. 2006) (noting that "[a]n employee's right to return to the same position after a qualified absence" falls under the FMLA interference provision).

For an employee to establish a prima facie FMLA interference claim, the employee must show that (1) she was an eligible employee; (2) her employer was subject to FMLA requirements; (3) she was entitled to leave; (4) she gave proper notice of her intention to take FMLA leave; and (5) her employer denied her the benefits to which she was entitled under the FMLA. *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017).

The District argues that Kibbie has failed to demonstrate the fifth element of her prima facie case because she was officially terminated not while she was out on leave, but a few days after her leave ended. Thus, the District contends, Kibbie cannot show that she was denied any benefits under the FMLA. Kibbie argues, however, that the District interfered with her right to *reinstatement* to her job when she returned from leave. Her return from leave involved nothing but a termination meeting, Kibbie contends, which cannot be considered reinstatement under the Act. The Court agrees.

The summary judgment evidence shows that Kibbie was scheduled to return to work when her leave ended on April 2, 2018. When she arrived at work that day, however, she was called into a meeting with Baker and Thomas. Dkt. Nos. 20-2 at ¶ 8, 19-3 at ¶ 3. During the meeting, Baker went over Howard's Performance Concerns letter, then handed Kibbie a letter notifying her that: "Effective immediately, you are placed on administrative leave, with pay." Dkt. No. 19-1 at p. 34.

Returning an employee "to a position only long enough to be fired does not amount to a meaningful reinstatement under the statute." *Burke v. Lab. Corp. of Am.*, 2009 WL 3242014, at *5 (M.D. Fla. Oct. 6, 2009); *see also Kendall v. Walgreen Co.*, 2014 WL 1513960, at *5 (W.D. Tex. Apr. 16, 2014) (holding that plaintiff alleged an interference claim where she was called into a meeting and terminated the day she returned from leave).[6] Accordingly, the Court rejects the District's argument that it did not interfere with Kibbie's rights under the FMLA.

The Court dismisses Kibbie's interference claim nevertheless. Although a plaintiff can pursue both an interference and a retaliation claim under the FMLA, Kibbie's interference claim is duplicative of her retaliation claim. A court looks to the substance of a plaintiff's claim to determine whether it arises from the deprivation of an FMLA entitlement (interference) or from punishment exacted for the exercise of an FMLA right (retaliation). *Cuellar*, 731 F.3d at 351. Here, the essence of Kibbie's interference claim is that she was terminated for exercising FMLA leave, not that she was denied the right to medical leave. This is the same argument she makes with regard to her retaliation claim.

Because the two claims are essentially identical, Kibbie's interference claim is duplicative and is dismissed. *See Shields v. Boys Town La., Inc.*, 194 F. Supp. 3d 512, 527 (E.D. La. 2016) (dismissing FMLA interference claim where plaintiff failed to allege she was denied or prevented from using any FMLA benefits, but rather that she was retaliated against for using her benefits);

---

[6] *See also Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1288 (10th Cir. 2007) (plaintiff made prima facie interference claim where "termination was a foregone conclusion by the time she returned to work, and her 'restoration' to her prior duties during the period of January 5-14, 2004 was illusory"); *VanStory-Frazier v. CHHS Hospital Co.*, 2010 WL 22770, at *10 (E.D. Pa. Jan. 4, 2010) (holding that plaintiff could pursue interference claim even though she was returned to her position for two weeks before she was fired); *Ostermyer v. Toledo Clinic, Inc.*, 2005 WL 927120, at *5 (N.D. Ohio April 18, 2005) ("While the FLMA does not entitle an employee to a perpetual position with her employer, I find no support for the proposition that an employer may skirt its reinstatement obligations merely by allowing an employee to work for a short period of time after receiving notice of her termination.").

*Kendall*, 2014 WL 1513960, at *5 (dismissing interference claim complaining of retaliatory discharge as opposed to interference with FMLA rights); *Spears v. Louisiana Dep't of Pub. Safety & Corr.*, 2014 WL 905185, at *3 (M.D. La. March 7, 2014) (dismissing interference claim where plaintiff asserted both retaliation and interference because interference claim was essentially a retaliation claim).[7]

## 2. Retaliation Claim

Finally, Kibbie alleges that she was terminated in retaliation for taking FMLA leave. Absent direct evidence of discriminatory intent, the Court again applies the *McDonnell Douglas* framework to determine the reason for her discharge:

> Once an employee propounds a *prima facie* case of interference or retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Thereafter, the burden shifts back to the employee to show by a preponderance of the evidence that the employer's articulated reason is a pretext for discrimination.

*Tatum v. S. Co. Servs.*, 930 F.3d 709, 713 (5th Cir. 2019) (cleaned up).

### a. Prima Facie Case

To make a prima facie case of retaliatory discharge under FMLA, an employee must show that (1) she engaged in a protected activity, (2) the employer discharged her, and (3) there is a causal link between the protected activity and the discharge. *Id.* at 713. The District does not dispute the first two elements but argues that Kibbie has failed to demonstrate that there was a causal link between her FMLA leave and her termination.

---

[7] *See also Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 282 (6th Cir. 2012) (affirming district court's decision to construe interference claim as a retaliation claim); *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1051 (8th Cir. 2006) (affirming district court's consolidation of interference and retaliation claims since plaintiff's interference claim was "fundamentally a claim for retaliation").

The Fifth Circuit has held that "temporal proximity between protected activity and alleged retaliation is sometimes enough to establish causation at the prima facie stage. The protected act and the adverse employment action must be very close in time to establish causation by timing alone . . . ." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948 (5th Cir. 2015) (cleaned up).

That Kibbie's job was posted as vacant while she was out on FMLA leave and that she was terminated the day she returned from leave constitute sufficient temporal proximity to satisfy a prima facie showing of causation. *See Gomez v. Office Ally, Inc.*, 2019 WL 2774367, at *5 (W.D. Tex. July 1, 2019) (finding that plaintiff established a prima facie case for retaliation where she was fired seven days after returning from FMLA leave). Kibbie has alleged sufficient facts to create a fact issue on her prima facie case.

### b. Legitimate, Nondiscriminatory Reason

The burden now shifts to the District to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Tatum*, 930 F.3d at 713. The District contends that Kibbie was terminated not because she took FMLA leave, but because of poor job performance, that is, "the District's discovery of the very poor condition in which Plaintiff left the Hays CISD benefits department when she went on leave in December 2017." Dkt. No. 18 at p. 2. The Fifth Circuit "has repeatedly held that a charge of 'poor work performance' is adequate when coupled with specific examples." *Burton*, 798 F.3d at 231; *see also E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 701-02 (5th Cir. 2014) ("Terminating an employee whose performance is unsatisfactory according to management's business judgment is legitimate and nondiscriminatory as a matter of law.").

In support of its assertion of poor job performance, the District points to Kibbie's initial 2017 performance evaluation in July 2017, in which Howard rated Kibbie "below expectations" in the

areas of instructional/operational, interpersonal, professional, and management standards. Dkt. No. 19-1 at p. 24-26. After Kibbie filed responses to Howard's criticisms of her job performance, Howard gave Kibbie an overall "satisfactory" rating in her final 2017 performance evaluation, submitted in September 2017. *Id.* at p. 27-31; Howard Affidavit, Dkt. No 19-2 at ¶ 5. But the final evaluation contained the following negative comments regarding Kibbie's job performance:

- [Kibbie] is able to interpret data, however, does not utilize the power of sharing data to inform and educate others.
- I would request Ms. Kibbie be more intentional in her communication of issues and concerns within her area of work and that she notify departmental administration when she makes decisions impacting the department and or the district as a whole.
- I have on occassion [sic] expressed my concern with Ms. Kibbie about professionalism in her interactions with her coworkers. Some of her communications with other HR staff would not be what should exemplify professionalism within our department.
- However, there are times when Ms. Kibbie would benefit from reflecting upon how she approaches training and development of others.

Dkt. No. 19-1 at p. 27-29. Howard's evaluation also included numerous positive statements, including the following closing remarks:

> I have observed Ms. Kibbie successfully juggle school work and her role as the Director of Benefits for HCISD. She has never neglected her job in the department for the sake of her own personal studies.
>
> ***
>
> I believe in Ms. Kibbie. She has many strengths and positive attributes that she is not always able to share because of the nature of her work. I look forward to supporting her to grow as a leader and not just as a manager.

Dkt. No. 19-1 at p. 30.

As stated above, Kibbie began her FMLA leave On December 15, 2017. While she was out on leave, the District alleges, Howard discovered that Kibbie had neglected some of her job duties. Howard testified that she had 2,700 unread emails; failed to cash checks from employees, pay bills,

or make payments to vendors; and that there were numerous discrepancies between employee enrollment and payroll deductions. Howard Affidavit, Dkt. No. 19-2 at ¶ 8-9. On February 1, 2008, Howard sent Kibbie the Performance Concerns letter notifying Kibbie that she had discovered these issues and that a "full investigation of these matters is being undertaken and upon your return to work, you will have an opportunity to provide an explanation for your actions." Dkt. No. 19-1 at p. 32. Although the District claims that a decision had not been made to terminate Kibbie at that time, on February 7, 2018, before she returned from leave or had an opportunity to respond to the letter, Howard posted Kibbie's position on the District's website. Dkt. No.19-2 at ¶ 10. The District argues that Kibbie never resolved her performance issues and therefore was terminated on April 13, 2018.

Based on this evidence, the District has satisfied its burden of showing a legitimate, non-retaliatory reason for terminating Kibbie. *See Burton*, 798 F.3d at 231 (holding that poor work performance was a legitimate, nondiscriminatory reason for termination where employee had received critical work assessments and had broken some work equipment, improperly accessed the Internet, and failed to complete tasks absent direction); *Faruki v. Parsons S.I.P., Inc.,* 123 F.3d 315, 320 (5th Cir. 1997) (holding that employer proffered legitimate, nondiscriminatory reasons for terminating employees where employer alleged employees had history of poor job performance, difficulties working with others, inadequate technical and leadership skills, inefficiency, and excessive billing); *Gulf Logistics*, 371 F. Supp. 3d at 310 (holding that failure to perform job duties was a legitimate, nondiscriminatory reason for termination).

### c. Pretext

The burden now shifts back to Kibbie to show that the District's articulated reason is a pretext for discrimination. Kibbie relies on (1) temporal proximity between her protected activity and her termination, and (2) that the reasons for terminating her are false or unworthy of credence.

The Court has found that Kibbie demonstrated temporal proximity between her leave and her termination. While temporal proximity may be sufficient to establish the causation element of a plaintiff's prima facie case for retaliation, however, it is insufficient to establish pretext standing alone. *Roberts v. Lubrizol Corp.*, 582 F. App'x 455, 461 (5th Cir. 2014) (citing *Feist v. La. Dep't of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) and *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007)). Thus, Kibbie must point to other evidence to support a showing of pretext.

Kibbie argues that the District's reasons for terminating her are false or unworthy of credence. First, Kibbie contends that she was never given an opportunity to respond to Howard's Performance Concerns letter before she was terminated. As noted, Howard posted Kibbie's job as vacant while she was out on leave and less than a week after sending Kibbie the letter. Dkt. No. 19-2 at ¶10. In addition, Kibbie alleges that Baker did not allow her to respond to the issues in the letter during the 20-minute meeting on April 2, 2018, when he placed her on administrative leave. Dkt. No. 20-2 at ¶ 8. These actions are consistent with Kibbie's argument that the District never intended to reinstate her after she returned from leave.

Kibbie also disputes the specific reasons listed in Howard's Performance Concerns letter and notes that the District never gave her an opportunity to defend her actions. Kibbie denies that she had 2,700 unread emails in her inbox and points out that the only evidence the District has to support this theory is Baker's deposition testimony, which she disputes. She also disputes that she

failed to pay vendors or bills. Kibbie argues that there are fact issues with regard to her overall job performance and notes the positive remarks and overall "satisfactory" rating in her final 2017 performance evaluation. Kibbie points to deposition testimony from one of her former coworkers that Howard had significant personal animosity toward Kibbie. Dkt. 20-5 at 30:4-31.6. In addition, Kibbie identifies summary judgment evidence showing Howard was unhappy that both Kibbie and her coworker were on FMLA leave. *See* Dkt. Nos. 19-4 at ¶ 4, 20-5 at 25:14-24.

The Court finds that Kibbie has produced sufficient evidence to create a fact issue as to pretext. Accordingly, the District's Motion for Summary Judgment with regard to Kibbie's FMLA retaliation claim is denied.

## IV. Conclusion

Based on the foregoing, Defendant's Motion for Summary Judgment (Dkt. No. 18) is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** as to Rita Kibbie's ADA claim and FMLA interference claim and **DENIED** as to her FMLA retaliation claim.

**SIGNED** on April 7, 2020.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE